## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **JULIE GRAVES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CAUSE NO:  1:14-cv-2091** |
| | ) |
| **BIOGEN IDEC, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiff, Julie Graves ("Graves"), brings this lawsuit against Defendant, Biogen Idec, Inc. ("Defendant"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981").

## PARTIES

2.      Graves has resided within the Southern District of Indiana at all relevant times.

3.      Defendant operates and conducts business within the Southern District of Indiana.

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 1981.

5.      Graves was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

6.      Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

7.      Graves satisfied her obligations to exhaust her administrative remedies, having timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission.  She received her "Dismissal and Notice of Rights" on her Charge and now timely files her lawsuit within 90 days after receipt of the Notice.

8.      Venue is proper in this Court.

## FACTUAL ALLEGATIONS

9.      Graves is black and African-American.

10.     Defendant hired Graves for the Area Business Manager ("ABM") II on or about September 12, 2012.

11.     Former Regional Sales Director Chris Kenyon ("Kenyon") hired Graves.

12.     Despite her many years of experience in the industry, Defendant hired her as an ABM II as compared with other less experienced and/or less qualified non-African-Americans who were hired as ABM IIIs.

13.     Defendant assigned her to study and train mostly from home with little or no corporate support prior to attending "in-house training," whereas other non-African-American ABMs received more corporate training and support before attending "in-house training."

14.     Graves, Kerry Sloss ("Sloss"), and Thuy Nguyen ("Nguyen") worked in the Indianapolis East territory.

15.     Sloss is Caucasian, and Nguyen is Vietnamese.

16.     Sloss and Graves were on equal standing – in other words, both received credit for work performed by them individually and collectively.

17.      Approximately 8 ABMs reported to Kenyon and then Regional Sales Director Lissa Mays ("Mays").

18.     Mays is Caucasian.

19.     Graves was the only African-American on Mays' team prior to Graves' termination.

20.     Graves' work performance met or exceeded Defendant's legitimate expectations at all relevant times.

21.     In Quarter 3 of 2013, the performance of Graves and Sloss was ranked 2nd out of 3

territories in the region, 7th out of 21 territories in the division, and 49th out of 108 territories in the nation.

22.    In Quarter 4 of 2013, the performance of Graves and Sloss was ranked 1st out of 3 territories in the region, 1st out of 21 territories in the division, and 4th out of 108 territories in the nation.

23.    Despite their performance, Mays placed Graves on a Performance Improvement Plan ("PIP") on or about January 23, 2014.

24.    Mays told Graves not to worry about the PIP because it would stay in the room.

25.    Mays informed Graves that she was not asking her to do more than what she was already doing, except instructing her to help Sloss and Nguyen gain access to her physicians, medical assistants, and medical staff and to complete additional administrative tasks as part of the PIP. Graves complied with this directive.

26.    Mays made offensive race- and/or color-based comments to Graves, including, but not limited to, how her skin is in good shape because of her ethnicity, how Graves can make her hair curly and straight but Caucasian people cannot do that, and how she could even be a member of a country club.

27.    Mays inquired on several occasions about how an African-American, like Graves, could straighten her curls and declared that Graves' straightened hair looked much better.

28.    Mays told Graves her skin had no wrinkles which was amazing because of her age as well as that her skin was in good shape because of her ethnicity.

29.    Mays noted to Graves that a black person's skin just does not wrinkle or sunburn as does a Caucasian's skin.

30.    Mays stated to Graves that she was surprised that people, like Graves, could even be

members of a country club.

31.     Graves found Mays' biased comments to be offensive and reprehensible.

32.     On or about April 25, 2014, Senior Sales Director Tim Hull and Mays contacted Graves, by telephone, to notify her she was being terminated.

33.     Defendant terminated Graves on or about April 25, 2014.

34.     Defendant did not discharge Sloss even though Sloss and Graves were to be of equal standing.

35.     Defendant has accorded more favorable treatment to similarly-situated individuals, who are not black and/or African American.

36.     Defendant took adverse employment actions against the Charging Party based on her race and/or color.

37.     Any reason proffered by Defendant for the adverse actions it has taken against Graves is pretextual.

38.     Graves has suffered injury as a result of Defendant's unlawful actions.

## COUNT I

## RACE DISCRIMINATION – SECTION 1981

39.     Graves hereby incorporates paragraphs 1-38 of her Complaint.

40.     Graves and Defendant had an employment relationship that was contractual in nature.

41.     Defendant terminated Graves based on her race.

42.     Graves' race was a motivating factor in the adverse employment actions Defendant took against her.

43.     Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Graves' rights as protected by Section 1981.

- 4 -

## COUNT II

## RACE/COLOR DISCRIMINATION – TITLE VII

44.     Graves hereby incorporates paragraphs 1-43 of her Complaint.

45.     Defendant terminated Graves based on her race and/or color.

46.     Graves' race was a motivating factor in the adverse employment actions Defendant took against her.

47.     Graves' color was a motivating factor in the adverse employment actions Defendant took against her.

48.     Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Graves' rights as protected by Title VII.

## REQUESTED RELIEF

WHEREFORE, Julie Graves, by counsel, respectfully requests that this Court find for her and order that:

1.     Defendant reinstate Graves to the same position, salary, and seniority, or pay front pay and benefits to her in lieu of reinstatement;

2.     Defendant pay lost wages and benefits to Graves;

3.     Defendant pay compensatory and punitive damages to Graves;

4.     Defendant pay pre- and post-judgment interest to Graves;

5.     Defendant pay Graves' attorneys' fees and costs incurred in litigating this action; and

6.      Defendant pay to Graves any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

Respectfully submitted,

*s/ John H. Haskin*
John H. Haskin (7576-49)

*s/ Bradley L. Wilson*
Bradley L. Wilson (21154-49)

Attorneys for Plaintiff
Julie Graves

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana  46204
Telephone:     (317)955-9500
Facsimile:      (317)955-2570
Email:          jhaskin@jhaskinlaw.com
                bwilson@jhaskinlaw.com

## DEMAND FOR JURY TRIAL

Plaintiff, Julie Graves, by counsel, respectfully requests a jury trial for all issues deemed triable.

Respectfully submitted,

*s/ John H. Haskin*
John H. Haskin (7576-49)